IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| (1) ANDREW CHABALLA, as Next of Kin of LAVERNE SOMERS, Deceased, and ANDREW CHABALLA as Administrator of the Estate of LAVERNE SOMERS<br><br>Plaintiffs,<br><br>v.<br><br>(1)    SP HEALTHCARE MANAGEMENT LLC<br><br>(2)    MIDWEST GERIATRIC MANAGEMENT, LLC<br><br>(3)    JUDAH BIENSTOCK<br><br>Defendant(s). | Case No.  5:22-cv-00772-F<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' NOTICE OF VIDEO DEPOSITION OF DEFENDANT SP HEALTHCARE MANAGEMENT LLC PURSUANT TO FRCP 30(B)(6)**

| | |
|---|---|
| Witness: | Corporate Representative of SP Healthcare Management LLC |
| Date/Time: | May 31, 2023, at 10:00am |
| Location: | Via Zoom Conference |
| Reporting Services by: | Steno Court Reporting |
| Video Recording by: | Steno Court Reporting |

1

If this date or time does not work for the deponent or counsel for all parties then Plaintiff's counsel will work to re-schedule the deposition at a mutually convenient time but no later than June 30, 2023.

PLEASE TAKE NOTICE that, pursuant to FRCP 30(b)(6) the stenographic video-recorded deposition of the above-named witness, will be taken before a qualified Notary Public.  The deposition will be taken upon oral examination pursuant to, and for all uses and purposes provided in the Federal Rules of Civil Procedure. The oral examination will continue from day to day until completed.

Pursuant to FRCP 30(b)(6) Plaintiffs hereby request this defendant to designate one or more officers, directors, managing agents, or other persons to testify on its behalf regarding the matters set forth below:

### DEFINITIONS

*"Resident"* refers to Laverne Somers

*"Facility"* refers to South Point Rehab & Care Center.

*"This Defendant"* refers to South Point Rehab & Care Center

*"Time Period of Resident's Stay"* refers to January 8, 2020, through October 22, 2020.

*"Relevant Time Period"* refers to August 8, 2019, through October 22, 2020.

*"Pertinent Years"* refers to the years 2019 through 2020

## TOPICS

1.      All email systems used in the operation of the Facility for the *Pertinent Years*, including all email software and versions presently and previously used, and the dates of use.

2.      All hardware that has been used or is currently in use as a server for the email system used at the Facility for the *Pertinent Years.*

3.      The backup and/or archive system in use at the Facility for emails in effect for the *Pertinent Years*.

4.      The organization, indexing, and filing of all email used by the Facility for the *Pertinent Years*.

5.      Destruction policies that would relate to any email generated or received by the Facility for the *Pertinent Years*.

6.      The capabilities of the Facility or a contracted vendor of Facility to filter, process, search, and analyze any email generated or received by the Facility for *Pertinent Years*.

7.      The Facility's method of search for email requested by Plaintiffs in this litigation.

8.      The identity of each director of operations and/or Regional Director assigned to the Facility during the *Relevant Time Period* and those person's job responsibilities during that period.

9.      Please describe and/or identify the material facts supporting each affirmative defense pleaded in the operative Answer to Plaintiffs' operative complaint:

10.      Please identify and describe any mobile devices used on the floor by nursing or other direct-care staff.  This should include any pagers, mobile phones, "walkie-talkies," or other communication or recording devices.  Further, please describe the purpose and process for utilizing these devices.

11.      Please describe and/or identify those individuals involved in developing, revising, reviewing, implementing, enforcing or otherwise establishing any policies, procedures or practices related to resident care (clinical) at or on behalf of {Facility}.

12.     For the Pertinent Years, please describe and identify any method by which an Administrator, Director of Nursing, Assistant Director of Nursing or MDS Coordinator is recruited, interviewed, vetted (background check performed) or hired/employed by {Facility}.  This should include identification of those individuals involved in any process to recruit, interview, perform background checks or hire any such individuals.

13.     For the Pertinent Years, please describe and identify any method by which a health care provider, e.g. aide, nurse, dietary aide/cook, social services staff, is recruited, interviewed, vetted (background check performed) or hired/employed by {Facility}.  This should include identification of those individuals involved in any process to recruit, interview, perform background checks or hire any such individuals.

14.     For the Pertinent Years, please describe and identify the process by which in-service training is provided to or conducted for health care providers in {Facility}. This should include identification of those individuals, by name, job title and employer, involved in providing such in-service training or education, how subject matter or topics are determined for such training and a description of how training materials are commonly prepared, and what records are maintained regarding in-service training.

15.     For the Pertinent Years, please describe and identify how training for direct-care positions in in {Facility} is evaluated, e.g., how is the proficiency of care givers assessed, monitored, recorded or measured.  This should include identification of those individuals, by name, job title and employer, involved in assessing proficiency or measuring skills, etc., and identification of what documents are maintained reflecting the proficiency of direct-care providers.

16.     For the Pertinent Years, please describe and identify the process, policy or procedures for recording, collecting, maintaining or otherwise monitoring employee time records for {Facility}.  This should include the policies, procedures and practices for collecting and maintaining such data or information, who maintains that data how (or if) such information is communicated to any entity outside of {Facility}, including any other Defendant.

17.     For the Pertinent Years, please describe and/or identify the person or persons and/or entity or entities who were responsible for creating or determining the staffing budget for {Facility}.

18.     For the Pertinent Years, please describe the process used to determine or set/establish the nursing budget (RN, LPN, Aide and all other caregivers) for {Facility}.

19.     For the Pertinent Years, please describe and/or identify the person or persons and/or entity or entities who were responsible for creating or determining the staffing matrix or grid for {Facility}.

20.     For the Pertinent Years, please describe and/or identify the person or persons and/or entity or entities who were responsible for determining or setting the nursing HPPD (RN, LPN, Aide and all other direct caregivers) for {Facility}.

21.     For the Pertinent Years, please describe the process used to determine or set/establish the nursing HPPD (RN, LPN, Aide and all other caregivers) for {Facility}.

22.     For the Pertinent Years, please describe the process used to receive, review, record, monitor, or report, etc., employee complaints about staffing or lack of (caregiver) staffing at {Facility}.

23.     For the Pertinent Years, please identify those individuals involved in receiving, reviewing, recording, monitoring, or reporting, etc., employee complaints about staffing or lack of (caregiver) staffing at {Facility}.

24.     For the Pertinent Years, please described the corporate, organizational, financial or other relationship, if any, between {Facility} and each Co-Defendant.

25.     For the Pertinent Years, please describe the policies, procedures and practices regarding the use of electronic mail, including the use of, retention of, and maintenance of any transmissions to or from employees of {Facility}. This should include identification of the individual, or entity/organization responsible for maintaining the server utilized by the facility to store or archive electronic mail to or from any facility employee or representative.

26.     For the Pertinent Years, please describe the process by which medical or treatment supplies of any kind are ordered, requested, purchased, or otherwise acquired by {Facility}.  This should include identification of the process by which any need for such supplies is determined or noted; the individuals involved in determining such need or requesting such supplies.

27.      For the Pertinent Years, please identify those individuals with decision making authority in approving or denying any request or order for supplies or other tangible resources utilized by the facility.  This should include identification of the entity responsible for placing orders for supplies, communicating with vendors; and a description of the method by which the supplies are paid for, and the accounts from which funds are drawn to pay for such supplies.

28.     For the Pertinent Years, please describe how payments, refunds, invoices, or other financial transactions are received from CMS/Medicare/Medicaid to {Facility}. This should include identification of any individual or entity/organization, not employed

by the facility, that handles, receives, or records these transactions.   Further, please identify the nature of the accounts these transactions are made to or from, including the account holders.

29.     With regard to the management fee paid by {Facility} to any other defendant, please describe the gross amount of such management and/or consulting fees for the Pertinent Years and describe the basis upon which such management and/or consulting fee is calculated.   Further, please identify any documents reflecting such amounts and state whether or not those documents are in the possession of this Defendant.

30.     Please identify any individuals *not* employed by {Facility} who may have provided care or treatment to {Resident} while he/she was a resident in the facility.   This should include any contract or agency physicians, nursing personnel, or administrative personnel not employed by {Facility}, as well as any consultants or other individuals affecting direct care in the facility

31.     The identity of each quality assurance support nurse assigned to Facility during the *Relevant Time Period*, and those person's job responsibilities during that period.

32.     The location of the bank account where the Facility's Medicare and Medicaid Receivables are deposited; and who is a signatory on that account during the *Relevant Time Period.*

33.     The identity and capability of each computer program (including desktop or laptop computer) accessible by the Administrator during the *Relevant Time Period* related to the operation of the Facility.

34.     All Owners, Officers, Members, and/or Managers of This Defendant as of the *Time Period of Resident's Stay.*

35.     The corporate structure of This Defendant during the *Time Period of Resident's Stay*.

36.     The person responsible for supervising the Administrator of this Defendant during the *Time Period of Resident's Stay*.

37.     How this Defendant implemented, interpreted and complied with 42CFR § 483.20; 42CFR § 483.21(a-b); 42CFR § 483.25(d); § 483.35(a-d); 42CFR § 483.70(b, d, q) during the *Time Period of Resident's Stay*.

38.     How did the Facility monitor and utilize the Nursing Home Compare Five Star Rating during the *Relevant Time Period.*

39.     The role defendant had in formulating the Facility budget at the Facility in effect during the *Relevant Time Period.*

40.     This Defendant's process for determining the amount of nursing staff required at the facility in effect during the *Time Period of Resident's Stay.*

41.     The content and process of developing the nursing staff budgets for This Defendant during the *Time Period of Resident's Stay.*

42.     The number of nursing staff on Resident's Hall and/or wing during the *Time Period of Resident's Stay.*

43.     The process defendant utilized to determine number of nursing staff on Resident's Hall and/or wing during the *Time Period of Resident's Stay.*

44.     The person responsible for approving the Facility budget in effect during the *Time Period of Resident's Stay.*

45.     How the *Facility* receives or obtains financing during the *Time Period of Resident's Stay.*

46.     The person or entity that pays if the *Facility* operates at a loss during the *Time Period of Resident's Stay.*

47.     The identity and role of the Governing Body – as defined by 42CFR § 483.70(d) – in the operation of the *Facility* during the *Time Period of Resident's Stay.*

48.     During the *Time Period of Resident's Stay*, the number of residents in each area/hall/wing of The Facility while Resident was a resident.

49.     During the *Time Period of Resident's Stay*, identification and description of the process of receiving, reviewing, charting, monitoring, forwarding, etc., employee complaints about staffing or lack of staffing at or on behalf of *The Facility*.

50.     During the *Time Period of Resident's Stay*, describe in detail the types of reports, records, and surveys that are prepared and maintained by *The Facility* which are forwarded to and/or from any other Defendant.

51.     During the *Time Period of Resident's Stay*, identification and description of the process by which information is collected and recorded for purposes of preparation of any staffing report, including, but not limited to any CMS Electronic Staffing Data Submission (Payroll Based Journal) Report or transmission. This should include identification of those individuals, by name and position, responsible for collecting,

recording, maintaining, reporting, verifying, reviewing or transmitting such information to any person or entity, including any other Defendant.

52.     The creation; accuracy; completion; and editing, if any, of the Care Plan contained in Resident's medical chart.

53.     The creation; accuracy; completion; and editing, if any, of the Resident Progress Notes contained Resident's medical chart.

54.     The creation; accuracy; completion; and editing, if any, of the Minimum Data Set contained in Resident's medical chart.

55.     All fall related interventions in place for Resident during the *Time Period of Resident's Stay*.

56.     To the extent that there is an absence of documentation in Resident 's facility chart state the name, current or last known address job title, and dates of employment for Facility employee, servant, agent, and/or independent contractor who will testify that undocumented services were provided despite lack of documentation; what services were provided that were not documented; and on what date the services were provided that were not documented.

57.     Identify the hallway name/number, the number of resident beds in said hallway, and the dates of each hallway that Resident was living in at the Facility during the Time Period of Resident's Stay.

Respectfully submitted,

/s/ Ryan J. Fulda
Ryan J. Fulda
OK Bar Number: 21184
Ryan.fulda@schafferherring.com
SCHAFFER HERRING PLLC
7134 South Yale, Ste. 300
Tulsa, Oklahoma 74136
Telephone: (918) 550-8105
Fax: (918) 749-8803


/s/ Jonathan Steele
Jonathan Steele, *Admitted Pro Hac Vice*
STEELE CHAFFEE, LLC
2345 Grand Boulevard, Suite 750
Kansas City, MO 64108
Ph: (816) 466-5947
Fax: (913) 416-9425
jonathan@nursinghomeabuselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2023 a copy of the above and foregoing was served electronically to all counsel of record.

*/s/ Jonathan Steele*
Attorney for Plaintiff(s)

9